AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Texas

United States Courts
Southern District of Texas
FILED

*June 29, 2025*

Nathan Ochsner, Clerk of Court

United States of America
v.
Raul Armando Ramirez Correa, Cesar Oskeiber Cabezas Pacheco, Peter Davila, Otis Jose Rodriguez Garcia, Dany Rojas, Pedro Hernandez Delgado, Ismael Leon Belbin, Jesus Fernandez Troconiz, and Embeer Gutierrez Ternawskyj.

*Defendant(s)*

Case No.  4:25-mj-0401

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 26, 2025__ in the county of __Harris__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21 U.S.C. Section 846 | Conspiracy to possess with intent to distribute more than 5 kilograms of cocaine |

This criminal complaint is based on these facts:

See attached Affidavit of probable cause

☑ Continued on the attached sheet.

*Complainant's signature*

Nicole Miyako, Task Force Officer
*Printed name and title*

Sworn to before me telephonically.

Date: 06/29/2025

*Judge's signature*

City and state: Houston, Texas

Peter Bray, United States Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Nicole Miyako, being duly sworn, do hereby depose and state:

1. I am a Task Force Officer with the Federal Bureau of Investigation (FBI), assigned to the Houston Division, in Houston, Texas. I have been so employed since March 2025. As part of my official duties as Task Force Officer, I am currently assigned to the Safe Streets Task Force. This unit investigates various violations of criminal law focusing on gangs, drugs, firearms, and violent crimes. I have received training in the areas of violent crime and organized crime and have conducted various types of electronic surveillance, authorized interception of wire and electronic communications. I have participated in the execution of search warrants and the debriefing of defendants, witnesses, and informants. I have been trained to participate in federal and state investigations that could result in the arrest and conviction of individuals, who have violated federal law. As a Task Force Officer, I am authorized to investigate violations of law of the United States and execute warrants issued under the authority of the United States.

2. The facts contained in this affidavit are based on my knowledge, training, and experience and upon information provided to me by other law enforcement officers and individuals. Since this affidavit is made for the limited purpose of supporting probable cause for a Criminal Complaint, I have not set forth every fact learned during the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the crimes charged. Unless otherwise indicated, where actions, conversations, and statements of others are related herein, they are related in substance and in part only.

1

3.  The facts in support of this affidavit and contained in the following paragraphs are the result of a joint investigation between the Federal Bureau of Investigation (FBI), Houston Police Department (HPD), and Department of Public Safety (DPS) into a criminal organization almost exclusively comprised of former members and associates of the transnational criminal organization, "Tren de Aragua" (TdA). This organization is known as Anti-Tren. Like TdA, the purposes of Anti-Tren include preserving and protecting the power and territory of Anti-Tren and its members and associates through acts involving attempted murder, including acts of violence and threats of violence directed at members and associates of TdA and enriching the members and associates of Anti-Tren through, among other things, the trafficking of firearms and controlled substances.

4.  RAUL ARMANDO RAMIREZ CORREA (R. CORREA), CESAR OSKEIBER CABEZAS PACHECO (C. PACHECO), PETER DAVILA (P. DAVILA), OTIS JOSE RODRIGUEZ GARCIA (O. GARCIA), DANY ROJAS (D. ROJAS), PEDRO HERNANDEZ DELGADO (P. DELGADO), ISMAEL LEON BELBIN (I. BELBIN), JESUS FERNANDEZ TROCONIZ (J. TROCONIZ), and EMBEER GUTIERREZ TERNAWSKYJ (E. TERNAWSKYJ) ("SUBJECTS") were identified through this investigation to be members and/or associates of Anti-Tren. This affidavit is being submitted in support of a criminal complaint charging the above-mentioned SUBJECTS with conspiracy to possess with intent to distribute a controlled substance, in violation of Title 21 United States Code, Section 846.

5.  I have not included each and every fact known concerning this investigation but have not omitted any material fact that undermines the statements and conclusions herein. I have put forth only the facts that I believe are necessary to establish probable cause to show that SUBJECTS violated Title 21 United States Code, Section 846.

## PROBABLE CAUSE

6.      In May 2025, the FBI, HPD and DPS began investigating Anti-Tren. Investigators used an FBI Confidential Human Source ("CHS 3") to conduct multiple firearm purchases from members and associates of Anti-Tren, to include R. CORREA, E. TERNAWSKYJ and O. GARCIA.

7.      On May 27, 2025, E. TERNAWSKYJ text messaged an FBI Confidential Human Source ("CHS 4") informing CHS 4 if he/she was interested in pink cocaine and Tusi, CHS 4 should contact Eduardo Muebles at 713-927-3171. The investigative team knows Eduardo Muebles to be an alias of R. CORREA and the cell phone number 713-927-3171 to be attributed to R. CORREA.

8.      On June 6, 2025, E. TERNAWSKYJ text messaged CHS 3 informing CH3 that if he/she was interested in purchasing the "pink stuff," CHS 3 needed to reach out to Eduardo. As stated in paragraph 7, the investigative team knows Eduardo to be an alias for R. CORREA.

9.      On June 10, 2025, CHS 3 mentioned to E. TERNAWSKYJ that he and his associates planned to have "the Barber" move cocaine by using the Barber's network in Houston, Texas. CHS 3 was introduced to "the Barber" for purposes of a weapons transaction by E. TERNAWSKYJ. The investigative team knows "the Barber" to be Raul SARMIENTO based on controlled purchases of firearms in furtherance of this investigation.

10.     On June 14, 2025, CHS 3, and an FBI Confidential Human Source ("CHS 6") consensually recorded a conversation with R. CORREA at a restaurant in Houston, Texas. CHS 3 and CHS 6 explained to R. CORREA that they were looking for a transportation network to move CHS 3's kilograms of cocaine from Houston to multiple locations. It was explained to R. CORREA that each load of cocaine would be between six and nine kilograms

of cocaine. R. CORREA agreed to move CHS 3's cocaine and followed up the meeting by advising he already had five of his people ready to move CHS 3's cocaine but wanted to bring two more of his people because CHS 3 had multiple cocaine loads.

11. On June 22, 2025, CHS 3 and an FBI Confidential Human Source ("CHS 7") consensually recorded a conversation with R. CORREA and E. TERNAWSKYJ at a restaurant in Houston, Texas. CHS 3 and CHS 7 discussed weapons transactions whereby R. CORREA and E. TERNAWSKYJ offered to sell the sources grenades, military grade weapons and kidnapping Houston residents to obtain other weapons. They also agreed to transport two separate loads of cocaine from Houston to secondary locations for a transportation fee of approximately $1,000 per member of the transportation team in addition to $1,500 to R. CORREA and E. TERNAWSKYJ for allowing CHS 3 to use their network.

12. On June 25, 2025, CHS 3 consensually recorded a conversation at a Houston park with R. CORREA, E. TERNAWSKYJ and FNU LNU. During the meeting, E. TERNAWSKYJ sold CHS 3 a rifle with a drop in auto sear which enables the rifle to fire like a machine gun. CHS 3, R. CORREA and E. TERNAWSKYJ agreed that on June 26, 2025, CHS 3 would pay R. CORREA and E. TERNAWSKYJ a fee for the cocaine transportation.

13. On June 26, 2025, E. TERNAWSKYJ advised CHS 3 that his crew was ready to meet with CHS 3 to transport CHS 3's two cocaine loads. CHS 3 provided a pin drop of Ikea located at 7810 Katy Freeway in Houston, Texas as the place he/she wanted to meet to conduct the cocaine transaction. At approximately 8:30 PM, E. TERNAWSKYJ advised that he and his crew were at the location and ready to meet with CHS 3. At approximately 8:45 PM, CHS 3 and CHS 7 arrived at the Ikea and met with E. TERNAWSKYJ. CHS 3 asked E.

TERNAWSKYJ where his crew was parked and E. TERNAWSKYJ advised that his crew would follow CHS 3's vehicle to the pickup spot.

14.     On June 26, 2025, at approximately 8:55 PM, CHS 3 and CHS 7 arrived in the same vehicle at an isolated strip of warehouses. CHS 3 and CHS 7 parked on the isolated strip of warehouses and observed RAUL ARMANDO RAMIREZ CORREA, CESAR OSKEIBER CABEZAS PACHECO, PETER DAVILA, OTIS JOSE RODRIGUEZ GARCIA, DANY ROJAS, PEDRO HERNANDEZ DELGADO, ISMAEL LEON BELBIN, JESUS FERNANDEZ TROCONIZ, and EMBEER GUTIERREZ TERNAWSKYJ (the SUBJECTS) enter the isolated strip of warehouses and park near CHS 3 and CHS 7. CHS 3 explained in English and CHS 7 translated into Spanish that E. TERNAWSKYJ and R. CORREA's crew were to transport two separate pelican cases to two separate locations in exchange for $10,000. Further it was explained in English and Spanish that each pelican case contained seven (7) kilograms of cocaine. CHS 3 and CHS 7 provided the two pelican cases represented to have seven (7) kilograms of cocaine per pelican case to the SUBJECTS who placed them in two separate vehicles. CHS 3 provided two separate pin drops of locations to R. CORREA and E. TERNAWSKYJ via text message as the address to deliver the two pelican cases each containing seven (7) kilograms of cocaine.

15.     During the transaction, CHS 3 noticed that the members of the crew were sharing cell phone GPS location with each other. CHS 3 and CHS 7 made payment of $10,000 to E. TERNAWSKYJ in exchange for all SUBJECTS agreeing to transport the two pelican cases containing seven (7) kilograms of cocaine. Before CHS 3 and CHS 7 took possession of the $10,000 from agents, the agents coated the $10,000 with a powder substance that would

5

transfer to anyone who touched the money. The powder substance is only visible with the use of a black light.

16.     The powder substance was later visible on the hands of E. TERNAWSKYJ, R. CORREA, P. DAVILA and D. ROJAS as shown in the pictures below:



EMBEER GUTIERREZ TERNAWSKYJ



6

RAUL ARMANDO RAMIREZ CORREA



PETER DAVILA





DANY ROJAS

17.     Upon placing the two pelican cases into the vehicles and receiving the $10,000 payment, the arrest team effectuated an arrest of SUBJECTS.

18.     Based on the foregoing facts, I believe that there is probable cause that on June 26, 2025, RAUL ARMANDO RAMIREZ CORREA, CESAR OSKEIBER CABEZAS PACHECO, PETER DAVILA, OTIS JOSE RODRIGUEZ GARCIA, DANY ROJAS, PEDRO HERNANDEZ DELGADO, ISMAEL LEON BELBIN, JESUS FERNANDEZ TROCONIZ, and EMBEER GUTIERREZ TERNAWSKYJ conspired to possess with intent to distribute more than five (5) kilograms of cocaine in violation of Title 21 United States Code, Section 846.

Nicole Miyako
Task Force Officer
Federal Bureau of Investigation

Sworn to before me and subscribed telephonically on this the 29th day of June 2025 and I find probable cause.

Peter Bray
United States Magistrate Judge

1.